# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HORNBECK OFFSHORE TRANSPORTATION, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:07-cv-01030 ) Judge Lamberth ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) ) |

## UNITED STATES' MOTION TO DISMISS UNDER RULE 12(b)(1) OR, IN THE ALTERNATIVE, RULE 12(b)(6)

The United States of America, by and through the undersigned counsel, respectfully

submits this Motion to Dismiss Plaintiff's claims under Rule 12(b)(1) or, in the alternative,

Rule 12(b)(6).  Support for this motion is set forth in the accompanying Statement of Points

and Authorities.  A proposed Order is also attached.

Dated:  November 16, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

DARRELL VALDEZ
Assistant United States Attorney

  S/ RODNEY PATTON
RODNEY PATTON
Trial Attorney, Civil Division
Torts Branch
Aviation and Admiralty Litigation
P. O. Box 14271
Washington, D.C.  20044-4271
Telephone:  (202) 616-4105
Facsimile:  (202) 616-4002
E-Mail: rodney.patton@usdoj.gov

  S/ JOHN S. LUCE Jr.
JOHN S. LUCE Jr.
Trial Attorney, Civil Division
Torts Branch
Aviation and Admiralty Litigation
P. O. Box 14271
Washington, D.C.  20044-4271
Telephone:  (202) 616-4035
Facsimile:  (202) 616-4159
E-Mail:  john.luce@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of November 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Lawrence I. Kiern
WINSTON & STRAWN, LLP

    S/ RODNEY PATTON
RODNEY PATTON
Trial Attorney, Civil Division
Torts Branch
Aviation and Admiralty Litigation
P. O. Box 14271
Washington, D.C.  20044-4271
Telephone:  (202) 616-4105
Facsimile:  (202) 616-4002
E-Mail: rodney.patton@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORNBECK OFFSHORE TRANSPORTATION, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:07-cv-01030 ) Judge Lamberth ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) ) |

## UNITED STATES' STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(1) OR, IN THE ALTERNATIVE, RULE 12(b)(6)

This is a putative tort claim based on a federal agency's interpretation of a statute. Hornbeck Offshore Transportation ("Hornbeck"), the owner of a single hull tank barge, brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 seeking monetary damages that allegedly result from a statutory interpretation of a provision of the Oil Pollution Act of 1990 ("OPA 90"), Pub.L. 101-380, 104 Stat. 484 (1990) that the Coast Guard made in the course of its administrative decision to issue a phase-out date for the barge of January 1, 2005. Hornbeck previously challenged the Coast Guard's administrative determination in a prior claim brought under the Administrative Procedures

Act ("APA").[1]  See Hornbeck Offshore Transportation, LLC v. United States Coast Guard, 424 F. Supp.2d 37 (D.D.C. 2006).  Hornbeck was successful in its APA challenge and on remand, the Coast Guard amended the single hull tank barge's Certificate of Inspection ("COI") to allow it to continue operating an additional ten years, until January 1, 2015. (Doc. 1, Compl. ¶ 38.)  Plaintiff now brings this putative tort claim seeking money damages.

The Court should dismiss this FTCA claim for lack of subject matter jurisdiction because there is no private party analog for Hornbeck's tort claim arising out of the Coast Guard's misinterpretation of a statute.  Alternatively, the Court should dismiss this action for failure to state a claim based on the doctrine of claim preclusion and the expiration of the FTCA's statute of limitations.

## I.    LEGAL AND FACTUAL BACKGROUND

### A.    Brief Overview of the Relevant Portions of OPA 90 Regarding the Phase-out of Single Hull Tank Vessels Such As Barges.

Congress passed OPA 90 in response to the massive oil spill that resulted from the 1989 grounding of the EXXON VALDEZ in Prince William Sound, Alaska.  OPA 90 mandates that newly constructed tank vessels engaged in the maritime transport of oil in the United States must be constructed with a double hull.  See 46 U.S.C. § 3703a; Hornbeck, 424 F. Supp.2d at 39.  For single hull tank vessels, including barges, that were in existence at the time OPA 90 was enacted, the statute mandates that such vessels be equipped with double

---

[1]  Hornbeck also brought a Freedom of Information Act (FOIA) action that was dismissed without prejudice. (Doc. 35, Praecipe of Dismissal, Hornbeck Offshore Transportation, LLC v U.S. Coast Guard, 424 F. Supp. 2d 37 (D.D.C. 2006) (No. 1:04-cv-01724 (CKK)).

hulls by a certain date or be phased-out of service based on a statutory schedule. <u>See</u> 46 U.S.C. § 3703a; <u>Hornbeck</u>, 424 F. Supp.2d at 39; Doc. 1, Compl. ¶ 7. The phase-out schedule is based on a vessel's gross tonnage, hull design, and construction date. <u>See</u> 46 U.S.C. § 3703a; <u>Hornbeck</u>, 424 F. Supp.2d at 39; Doc. 1, Compl. ¶ 7. January 1, 2005 is the OPA 90 phase-out date for a single hull tank vessel built before 1980 with a gross tonnage of 5000 gross tons or more, whereas January 1, 2015 is the phase-out date for a vessel with a gross tonnage of less than 5000 gross tons. <u>See Hornbeck</u>, 424 F. Supp.2d at 39-40 (applying 46 U.S.C. § 3703a(c)(3)(A), (c)(2)); Doc. 1, Compl. ¶¶ 8, 9.

Because these phase-out dates relied, in part, on a vessel's gross tonnage, vessel "owners began obtaining *de facto* extended deadlines by reducing the documented carrying capacity of their vessels." <u>Hornbeck</u>, 424 F. Supp.2d at 40. In 1997, Congress amended OPA 90 to eliminate this practice. <u>See id.</u> This amendment, often referred to as the Frelinghuysen Amendment, added the following pertinent provision to 46 U.S.C. § 3703a:

> (e)(1) For the purposes of this section and except as otherwise provided in paragraphs (2) and (3) of this subsection, the gross tonnage of a vessel shall be the gross tonnage *that would have been recognized* by the Secretary on July 1, 1997, as the tonnage measured under [the regulatory measurement system], or as an alternate tonnage measured under [the convention measurement system] as prescribed by the Secretary under section 14104 of this title.

3

46 U.S.C. § 3703a(e)(1) (emphasis added).[2]  The interpretation of the statutory phrase, "that would have been recognized," was "the crux" of the APA lawsuit.  Hornbeck, 424 F. Supp.2d at 50.

### B.    Background of the Single Hull Tank Barge ENERGY 8701.

The ENERGY 8701, the tank barge whose phase-out date is at the center of this serial litigation, was originally constructed in 1976.  See id. at 40-41.  It is "360 feet long, 64 feet wide, and 27 feet deep; when fully loaded, the vessel is capable of carrying 85,000 barrels ([3.57] million gallons) of oil."  Id. at 41.  In 1976 the vessel was measured under the regulatory measurement system and its gross tonnage was calculated as 5323.19 gross tons. See id.  When Hornbeck acquired the barge in 2001, Hornbeck "believed that the barge would be phased out of service on January 1, 2005; indeed, the Coast Guard Certificate of Inspection for ENERGY 8701, dated November 27, 2001 (five months after [Hornbeck]'s purchase of the vessel), notes that the gross tonnage of the vessel is 5323 GRT and specifically states that the OPA 90 phase-out date for the barge is January 1, 2005."  Id.

In early 2004, Hornbeck planned to send the ENERGY 8701 on a commercial voyage to Canada.  See id.; Doc. 1, Compl. ¶ 17.  As part of the international legal requirements for

---

[2]  The gross tonnage measures a vessel's internal volume, not the vessel's displacement or the weight of the vessel itself.  See Hornbeck, 424 F. Supp.2d at 40; Doc. 1, Compl. ¶ 10. The United States recognizes both the regulatory measurement system under 46 U.S.C. § 14502 and the convention measurement system under 46 U.S.C. § 14302.  See Hornbeck, 424 F. Supp.2d at 40; Doc. 1, Compl. ¶ 10.  Although both systems measure the internal volume of a vessel, a vessel's gross tonnage may be different depending upon which measurement system was used because each uses different measuring criteria to calculate gross tonnage.  See Hornbeck, 424 F. Supp.2d at 40; Doc. 1, Compl. ¶ 10.

4

this voyage, Hornbeck was required to have the barge measured under the convention measurement system.  See Hornbeck, 424 F. Supp.2d at 41.  The American Bureau of Shipping ("ABS") conducted a survey and calculated the vessel's tonnage as 4660 gross tons under the convention measurement system.[3]  See id.; Doc. 1, Compl. ¶ 17.

### C.     The Coast Guard's Decision Interpreting 46 U.S.C. § 3703a(e)(1)

Seeking to take advantage of this hitherto unknown tonnage calculation, on March 8, 2004, Hornbeck applied to the Coast Guard's Marine Safety Center to have the single hull tank barge's phase-out date changed from January 1, 2005 to January 1, 2015.  See Hornbeck, 424 F. Supp.2d at 42; Doc. 1, Compl. ¶ 18.  On March 29, 2004, the Coast Guard denied Hornbeck's application stating:

> [W]e interpret the language of 46 U.S.C. § 3703a(e)(1) as requiring the OPA 90 requirements to be applied using the correct regulatory measurement system tonnage for the vessel on July 1, 1997, since at that time the laws of the United States were applied to the vessel using regulatory tonnage. Accordingly, unless we are presented with evidence of an error in the 1976 admeasurement, the tonnage for applying the OPA 90 requirements is 5323 GRT.

Hornbeck, 424 F. Supp.2d at 42; Doc. 1, Compl. ¶ 19.

### D.     Hornbeck's Administrative Appeal and APA Claim

On July 29, 2004, Hornbeck appealed the Coast Guard's decision within the Agency. See Hornbeck, 424 F. Supp.2d at 42; Doc. 1, Compl. ¶ 20.  On September 15, 2004, the Coast Guard denied Hornbeck's appeal stating:

---

[3] There is no dispute over the accuracy of the measurement.

> Section 3703a of title 46 United States Code states that the
> 'gross tonnage of a [vessel] shall be the gross tonnage that
> would have been recognized by the Secretary on July 1, 1997.'
> We agree with the Marine Safety Center's interpretation that the
> vessel's tonnage as of July 1, 1997, is the tonnage to be used in
> determining the OPA 90 phase out.  The gross tonnage of the
> barge ENERGY 8701 on July 1, 1997 was 5323.19 tons,
> measured under the standard [i.e., Regulatory] measurement
> system used for regulatory purposes.

Hornbeck, 424 F. Supp.2d at 42; Doc. 1, Compl. ¶ 21.  Hornbeck removed the vessel from

operation prior to the phase out date of January 1, 2005.  (Doc. 1, Compl. ¶ 23.)  Hornbeck

filed the APA claim on October 8, 2004.  Hornbeck, 424 F. Supp.2d at 42; Doc. 1, Compl.

¶ 24.  The Court found that the Coast Guard's interpretation was arbitrary, capricious, and

otherwise not in accordance with the law and remanded the case to the Coast Guard for

further action consistent with the Court's opinion.  Hornbeck, 424 F. Supp.2d at 58.  On

remand the Coast Guard amended the single hull tank barge's COI to allow it to continue

operating until January 1, 2015.  (Doc. 1, Compl. ¶ 38.)

On September 12, 2006, Hornbeck presented the Coast Guard with an administrative

tort claim pursuant to the jurisdictional requirements of the FTCA.  (Doc. 1, Compl. ¶ 41.)

The Coast Guard denied the claim on February 21, 2007.  (Doc. 1, Compl. ¶ 42).

## II.    LAW/ANALYSIS

This Court should grant the United States' Motion to Dismiss because (1) there is no

private party analog for Hornbeck's tort claim arising out of an agency's misinterpretation

of a statute, (2) Hornbeck is barred by the doctrine of claim preclusion from serially litigating

the issue of statutory interpretation first in an APA claim and then in a subsequent FTCA

lawsuit, and (3) the statute of limitations has run on Hornbeck's claim that it was damaged by the Coast Guard's allegedly negligent interpretation of the pertinent statutory language.[4] Each of these arguments will be addressed seriatim. But we will turn first to the applicable standards of review for this motion to dismiss.

### A.     Standards of Review for Rule 12(b)(1) and Rule 12(b)(6)

Federal courts are courts of limited jurisdiction and may hear cases upon a grant of power contained in the Constitution or in an act of Congress. See e.g., United States ex rel Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp.2d 25, 45 (D.D.C. 2007) (Lamberth, J.). In the present action Hornbeck asserts jurisdiction for its claim under the United States' waiver of sovereign immunity in 28 U.S.C. § 1346(b). (Doc. 1, Compl ¶ 1). In Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471 (1994), the Supreme Court set out the six elements of the United States' waiver of sovereign immunity contained in that section. See Meyer, 510 U.S. 471, 477 (1994). Included in those jurisdictional elements is the requirement "that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" Meyer, 510 U.S. at 477-78 (quoting 28 U.S.C. § 1346(b) and finding that "[a] constitutional tort claim . . . could not contain such an allegation"). Therefore, the United States' motion to dismiss is

---

[4] The United States limits its motion to these three arguments because they are each dispositive and each can be resolved without resort to discovery. In the event the Court denies this motion, the United States reserves the right to file other potentially dispositive motions that may require, or benefit from, discovery such as motions based on the FTCA's exceptions for discretionary function, due care, and interference with contract rights.

one for lack of subject matter jurisdiction. <u>Id.</u> at 475 ("Sovereign immunity is jurisdictional in nature."); Fed. R. Civ. P. 12(b)(1).

Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. <u>See</u> <u>Brady Campaign to Prevent Gun Violence v. Ashcroft</u>, 339 F. Supp.2d 68, 72 (D.D.C. 2004) (Lamberth, J.). In deciding whether to grant a motion to dismiss under Rule 12(b)(1), a court "accept[s] all of the factual allegations in the complaint as true." <u>Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1254 (D.C. Cir. 2005) (internal quotation omitted). While a court may decide factual matters outside the pleadings in a factual challenge, the United States brings this motion as a facial challenge based on the facts in the complaint. <u>See</u> <u>Herbert v. National Acad. of Science</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, the United States brings this motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In a challenge under this rule, "the Court must determine whether the challenged complaint adequately states a claim on which relief may be granted." <u>Aktieselskabet AF 21 v. Fame Jeans, Inc.</u>, ___ F. Supp.2d ___, 2007 WL 1655877, at *2 (D.D.C. Jun. 7, 2007) (Lamberth, J.). A complaint is required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and needs to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (internal quotation omitted); <u>see also</u> <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (same). In evaluating a motion under Rule 12(b)(6), the Court draws factual inferences in the plaintiff's favor. <u>Aktieselskabet</u>, 2007 WL 1655877, at *2. "While a

8

complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations omitted).

**B.    No Private Party Analog Exists For Hornbeck's Putative Tort Claim.**

Hornbeck's Complaint must be dismissed for lack of subject matter jurisdiction because its putative tort claim does not – and cannot – assert the requisite private party analog to support an FTCA claim arising out of the Coast Guard's (mis)interpretation of a statute that Congress has delegated to the agency to administer. The deficiency is that basic. <u>Cf.</u> <u>Employers Ins. of Wausau v. United States</u>, 830 F. Supp. 453, 454-55 (N.D. Ill. 1993) (explaining the "counterintuitive" nature of an FTCA claim premised on an agency's statutory misinterpretation and recognizing the action's "basic" flaw).

An action can be brought against the United States only to the extent the government waives its sovereign immunity. <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984). The FTCA constitutes a limited waiver of sovereign immunity. <u>Molzof v. United States</u>, 502 U.S. 301, 305 (1992). The FTCA does not create a cause of action against the United States; rather, the Act makes the United States liable in tort in accordance with the applicable local law. <u>Art Metal-USA, Inc. v. United States</u>, 753 F.2d 1151, 1157 (D.C. Cir. 1985). Specifically, the United States has waived sovereign immunity as follows:

> [T]he district courts . . . shall have exclusive jurisdiction of civil

9

actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (2000) (emphasis added).  In similar language, the FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674 (2000).

This private party analog does not mean that the United States is immune from suit in cases involving "core governmental functions" or other situations in which only the government performs those tasks.  See, e.g., Wells v. United States, 851 F.2d 1471, 1473-74 (D.C. Cir. 1988) (rejecting the government's arguments to that effect in dicta, the court rendering its ruling on the discretionary function exception);[5] Canadian Transp. Co. v. United

---

[5] In Wells, the Circuit Court of Appeals for the District of Columbia held that the discretionary function exception to the FTCA barred the claims of residents from a neighborhood surrounding a lead smelter facility from suing the United States for a federal agency's failure, inter alia, to communicate the facility's health risks to the public.  Wells, 851 F.2d at 1472, 1475-78.  In dicta, the court rejected the government's argument that the FTCA "does not apply when the government is engaged in a 'core governmental function.'"  Id. at 1473.  Perhaps equating the parameters of this argument with the parameters of the statutory requirement for a private party analog, the court went to state that "[v]ery few decisions even mention the Act's private liability requirement and we have found no decisions that rely solely on such requirement or any 'core governmental function' doctrine in holding the government immune from suit."  Id.  As the plethora of cases set forth in the text demonstrate, the private party analog – uncoupled from its frequent jurisdictional partner, the discretionary function exception – still retains an intrinsic vitality as a basis for dismissal for lack of subject matter jurisdiction.

10

States, 663 F.2d 1081, 1090 (D.C. Cir. 1980) ("Many recent cases have imposed liability upon the United States for its performance of activities that are not usually performed by private persons."); see also, e.g., Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997) ("peculiarly governmental function" does not preclude FTCA coverage). Consequently, when private persons do not perform the government activities at issue – an agency's interpretation of a federal statute that it has been charged with administering – the Court must "look further afield" for other "like circumstances." United States v. Olson, 546 U.S. 43, 46 (2005).

The private party analog requirement does mean that an FTCA claim will not provide a "vehicle for recovery" unless Hornbeck has alleged that a private individual in like or analogous circumstances would have violated a comparable duty owed to Hornbeck that has been imposed by the law of the District of Columbia.  See Olson, 546 U.S. at 46-47; Rayonier, Inc. v. United States, 352 U.S. 315, 318-19 (1957); Art Metal-USA, Inc. v. United States, 753 F.2d 1151, 1157–60 (D.C. Cir. 1985); Canadian Transp. Co., 663 F.2d at 1091; Pate v. United States, 328 F. Supp.2d 62, 76 (D.D.C. 2004); Tripp v. United States, 257 F. Supp.2d 37, 44-45 (D.D.C. 2003); Loughlin v. United States, 230 F. Supp.2d 26, 44 (D.D.C. 2002); Appleton v. United States, 180 F. Supp.2d 177, 184 (D.D.C. 2002); Sterling v. United

States, 798 F. Supp. 47, 48 (D.D.C. 1992).[6]  Duty is the key.

Hornbeck has failed to assert such a duty exists under the law of the District of Columbia.  Although Hornbeck's Complaint parrots the findings of the district court in their successful APA claim, the pleading says little about what tort the agency is alleged to have committed. In paragraph six, Hornbeck asserts that it is seeking damages because of the "Coast Guard's lack of due care, negligence and/or wrongful act or omission in assigning an improper OPA 90 phase-out date for the Barge and [for its failure] to apply the proper phase-out date for the Barge." (Doc. 1, Compl. ¶ 6).  Elsewhere, they repeat this vague legal incantation. (Doc. 1, Compl. ¶ 39).  The only other allegation in which Hornbeck alludes to the applicable state law that must drive this FTCA vehicle is its notably nebulous assertion that the "Defendant is liable to the Plaintiff in accordance with the laws of the District of Columbia." (Doc. 1, Compl. ¶ 40).

This is insufficient.  "[S]urely a litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized." Johnson v. United States, 547 F.2d 688, 691-92 (D.C. Cir. 1976); see Art Metal-USA, Inc. v. United States, 753 F.2d 1151, 1160 & n.16

---

[6] Cases dealing with the private party analog requirement of the FTCA are legion.  See, e.g., Green Acres Enter., Inc. v. United States, 418 F.3d 852, 856-57 (8th Cir. 2005); United States v. Agronics, Inc., 164 F.3d 1343, 1345-47 (10th Cir. 1999); Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 535-38 (1st Cir. 1997); Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995) (en banc); Myers v. United States, 17 F.3d 890, 898-905 (6th Cir. 1994); Westbay Steel, Inc. v. United States, 970 F.2d 648, 650 (9th Cir. 1992); Akutocz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988).

12

(D.C. Cir. 1985);[7] Sterling v. United States, 798 F. Supp. 47, 48 (D.D.C. 1992) ("There is no allegation [in the complaint] of any violation of underlying state law, other than a vague reference to 'negligence.'"); see also Westbay Steel, Inc. v. United States, 970 F.2d 648, 650 (9th Cir. 1992) ("Merely alleging negligence is insufficient to state a claim" under the FTCA).

There is good reason for Hornbeck's reluctance to identify any private party analog to the actions of the Coast Guard – none exists. A reading of its Complaint, in conjunction with the district court's decision in the prior APA claim, reveals that Hornbeck's alleged injuries all emanate from the Coast Guard's discharge of its administrative duties in interpreting an amendment to OPA 90. Doc. 1, Compl.; Hornbeck Offshore Transp., LLC v. United States Coast Guard, 424 F. Supp.2d 37 (D.D.C. 2006). Hornbeck requested the Coast Guard change the tank barge's phase-out date from January 1, 2005 (for vessels above 5000 gross tons) to January 1, 2015 (for vessels below 5000 gross tons) after the company had received, what the court in the APA claim called, its "pleasant surprise" in the form of a lower measurement for the barge under the Convention measurement system. (Doc. 1, Compl. ¶ 18).

The agency's denial of this request demonstrates that the decision was based on an interpretation of the Frelinghuysen Amendment, and, in particular the phrase "would have

---

[7] In Art Metal-USA, Inc., the Circuit Court of Appeals for the District of Columbia criticized a decision by another court for failing to "consider the FTCA's local law requirement beyond a cursory and simplistic reliance on general principles of negligence and negligence *per se*." Art Metal-USA, Inc., 753 F.2d at 1159 n.15.

been recognized by the Secretary on July 1, 1997." (Doc. 1, Compl. ¶ 19). The allegation

in the Complaint states:

> 19.    Notwithstanding the injury and damages it caused
> Hornbeck, on March 29, 2004, the Agency denied
> Hornbeck's request and stated:
>
> [W]e interpret the language of 46 U.S.C.
> 3703a(e)(1) as requiring the OPA 90
> requirements to be applied using the correct
> regulatory measurement system tonnage for the
> vessel on July 1, 1997[. S]ince at that time the
> laws of the United States were applied to the
> vessel using the regulatory tonnage [,] . . . the
> tonnage for applying the OPA 90 requirements is
> 5323 GRT.

(Doc. 1, Compl. ¶ 19 (emphasis added)). The plain language of this denial indicates that it

was made on the basis of the agency's interpretation of the pertinent amendment to OPA 90.

This conclusion is buttressed by the language of the agency's denial of Hornbeck's

internal agency appeal. In that denial, the Coast Guard stated:

> Section 3703a of title 46 United States Code states that the
> 'gross tonnage of a [vessel] shall be the gross tonnage that
> would have been recognized by the Secretary on July 1, 1997.'
> *We agree with the [Coast Guard] Marine Safety Center's
> interpretation* that the vessel's tonnage as of July 1, 1997, is the
> tonnage to be used in determining the OPA 90 phase out. The
> gross tonnage of the barge ENERGY 8701 on July 1, 1997 was
> 5323.19 tons, measured under the standard [i.e., Regulatory]
> measurement system used for regulatory purposes.

Hornbeck, 424 F. Supp.2d at 42.

Hornbeck sought judicial review of the agency's interpretation of the statute through

an APA claim in district court in the District of Columbia. See id. Hornbeck argued that the

14

Coast Guard's interpretation was contrary to the plain language of the statutory amendment. Id. at 43. The district court agreed, finding that the agency had misread the statutory amendment. Id. at 46-58. The decision is replete with references to the agency's statutory interpretation. Hornbeck now brings this FTCA claim, asserting that the agency's misinterpretation of the statutory language caused the company more than $6.5 million in losses. (Doc. 1, Compl. ¶¶ 19, 21, 39).

Based on the foregoing, there is no doubt that the gravamen of Hornbeck's claim against the United States is that a federal agency *misinterpreted a statute* and that this misinterpretation caused Hornbeck economic losses. One case neatly sums up why Hornbeck cannot, on this basis, maintain an action for money damages against the United States. See Employers Ins. of Wausau v. United States, 830 F. Supp. 453 (N.D. Ill. 1993). In that case involving environmental clean-up statutes, Employers Insurance of Wausau brought an FTCA claim to recover $2.0 million that it "spent to take removal action as the result of contamination at an oil recycling facility." Id. at 454. Plaintiff argued that it had to expend this money because of the Environmental Protection Agency's "wrongheaded pursuit" of Wausau as a 'Potentially Responsible Person' based upon its "dead wrong" interpretation of the relevant CERCLA provisions Id. at 454-55. Even though the government sought dismissal pursuant to the discretionary function exception, the court dismissed the case for an "even more basic reason" – no private party analog – and thus gave voice to its "initial," "nagging," and "persisting" sense that "Wausau has no legal justification for its Procrustean effort to shape its claim so as to fit within the FTCA." Id.

15

The court persuasively articulated its visceral response to this anomalous FTCA claim:

> Except perhaps in the minds of [plaintiff] and its lawyers, it would seem strongly counterintuitive for anyone to suggest that the United States – by the partial surrender of its sovereign immunity that is represented by the FTCA – intended to lay itself open to liability *in tort* because one of its executive agencies turned out to have construed a statute differently from the reading that the courts might ultimately give that statute. Assume for example that a government official . . . issued a regulation or ruling or otherwise applied [a] statutory provision covering [an] activity in one colorable way, only to find that the reading embodied in that regulation or ruling or application [of the statute] was ultimately rejected by a Court of Appeals or the Supreme Court.  Would anyone seriously contend that such a difference in views would trigger *tort* liability for the government?

Id. at 455.  The court answered its own question with a resounding "Of course not!"  Id.  This Court should do likewise.

Courts in this jurisdiction have found that the lack of a private party analog precludes an FTCA claim based on analogous administrative action by federal agencies in the conduct of their own affairs.  See, e.g., Jayvee Brand, Inc. v. United States, 721 F.2d 385, 388, 390 (D.C. Cir. 1983) (Bork, J., with Lumbard, J., concurring on different grounds, and Edwards, J., concurring in the result) (finding no private party analog in FTCA action for an agency's failure to follow statutorily prescribed procedures); Pate v. United States, 328 F. Supp.2d 62, 76-77 (D.D.C. 2004) (finding no private party analog for an agency's failure to adhere to the legal requirement that parolees receive timely revocation decisions).

Courts in other jurisdictions have reached the same result.  See United States v.

16

Agronics, Inc., 164 F.3d 1343, 1345-47 (10th Cir. 1999) (no private party analog for FTCA claim that federal agency had breached its statutory duty in determining the parameters of its statutory jurisdiction); Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 535-38 & n.11 (1st Cir. 1997) (finding no private party analog for an agency's alleged failure to meet its statutory obligations);  Dorking Genetics v. United States, 76 F.3d 1261, 1267 (2d Cir. 1996) (finding it "hard to imagine how state law could recognize a duty of a private person to stop international commercial transactions, the regulation of which is reserved exclusively to the federal government"); Akutowicz v. United States, 859 F.2d 1122, 1125-26 (2d Cir. 1988) (finding no private party analog for the government's "quasi-adjudicative" decision to revoke citizenship); C.P. Chem. Co. v. United States, 810 F.2d 34, 37-38 (2d Cir. 1987) (finding no "comparable . . . activity in private life" to quasi-legislative or quasi-adjudicative actions in an FTCA claim for "an agency's failure to follow procedures prescribed by a regulation or statute"); United States v. Smith, 324 F.2d 622, 624-25 (5th Cir. 1963) (finding no private party analog because the language of the FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs").

Simply put, the private party analog "requirement . . . prevents a tort suit against the government when local laws are clearly inapplicable, for instance, in cases involving administrative action or other matters in which alternative procedures for appeal exist and the tort system is an inappropriate framework for seeking relief." Loughlin v. United States, 230 F. Supp.2d 26, 44-45 (D.D.C. 2002) (citing, inter alia, Jayvee Brand, Inc. v. United

17

States, 721 F.2d 385 (D.C. Cir. 1983)).

In Jayvee Brand, Inc., the manufacturers of children's sleepwear brought an FTCA

action in which they sought $30 million in damages allegedly arising out of the Consumer

Product Safety Commission's issuance of a regulation that had banned the sale of their

product. Jayvee Brand, Inc., 721 F.2d at 387. Like Hornbeck, the plaintiffs in Jayvee Brand,

Inc. had previously litigated a case for equitable relief in which a federal court enjoined the

Commission from enforcing the regulation due to its failure to follow statutorily prescribed

procedures. Id; Springs Mills, Inc. v. Consumer Prod. Safety Comm'n, 434 F. Supp. 416,

417-18, 435 (D.S.C. 1977) (issuing the preliminary injunction). Again, like Hornbeck, the

children's sleepwear manufacturers were now asking a federal court "to make a major

innovation in the law by holding that the FTCA provides damage actions as an additional

means of policing the internal procedures of governmental agencies." Jayvee Brand, Inc.,

721 F.2d at 391 (Bork & Lumbard, JJ.). The Court of Appeals for the District of Columbia

declined the invitation – and so this Court must also – because Congress did not, "in passing

the FTCA, envision[] the creation of such a sweeping challenge to administrative

determinations." Id. at 394 (Bork & Lumbard, JJ.).[8]

Hornbeck may seek to distinguish this burgeoning precedent by re-framing its claim

of negligent statutory interpretation as one more closely resembling precedent in this Circuit

that permits FTCA claims for the Federal Aviation Administration's (FAA) improper denial

of the issuance of medical certificates to pilots.  See Harr v. United States, 705 F.2d 500

(D.C. Cir. 1983); Beins v. United States, 695 F.2d 591 (D.C. Cir. 1982); Duncan v. United

States, 355 F. Supp. 1167 (D.D.C. 1973).  In each of these three cases a pilot sought either

the issuance or re-issuance of a medical certificate that the agency requires a pilot to possess

in order to legally fly. Harr, 705 F.2d at 501-02; Beins, 695 F.2d at 594-96; Duncan, 355 F.

Supp. at 1168-69.  An applicant that meets the medical standards the FAA has set forth in

its regulations has a legal right to the appropriate medical certificate.  Harr, 705 F.2d at 503;

Beins, 695 F.2d at 602-03; Duncan, 355 F. Supp. at 1169.  In each case, the FAA denied the

application.  Harr, 705 F.2d at 501-02; Beins, 695 F.2d at 594-96; Duncan, 355 F. Supp. at

1168. Each applicant filed suit and alleged that there was no reasonable medical basis under

---

[8]  As the Tenth Circuit has put it:

> Given the potential commercial impact of virtually all
> government regulation, holding the FTCA available to any
> persons or entities aggrieved in their business by administrative
> action would result in wholesale collateral second-guessing of
> federal regulatory activity – and under *state tort* law
> unconstrained by the comprehensive (APA) scheme Congress
> designed for the task of administrative review.

United States v. Agronics, Inc., 164 F.3d 1343, 1346 (10th Cir. 1999).

the established regulatory criteria to support the denial of the aeromedical certificates.  See Harr, 705 F.2d at 502-03; Beins, 695 F.2d at 597; Duncan, 355 F. Supp. at 1168-69.  The gravamen of these cases is that the agency misinterpreted the medical *facts* – the pilot's medical condition – in its application of those facts to the established medical criteria set forth in its own regulations.

This case is different.  Here, a federal court has ruled that the Coast Guard failed to interpret properly a federal statute and, as a result, failed to issue the correct phase-out date for Hornbeck's tank barge pursuant to the statutory schedule.  Hornbeck Offshore Transp., LLC v. United States Coast Guard, 424 F. Supp.2d 37 (D.D.C. 2006).  If this case were analogous to Harr, Beins, and Duncan, then the Coast Guard's decision would have been based on a *factual* error, not a *legal* error.  There was no factual dispute that the ENERGY 8701 yielded a measurement of below 5000 gross tons under the Convention measurement system.  The Coast Guard did not misinterpret that fact; the agency misinterpreted the law. One is grounds for a negligence action, the other is not.

For the reasons set forth above, this Court should dismiss Hornbeck's action pursuant to Rule 12(b)(1) for lack of a private party analog, thereby frustrating its Procrustean efforts to fit the square peg of their re-packaged APA claim into the round hole of an FTCA claim.[9]

---

[9] Alternatively, the court should dismiss this action under Rule 12(b)(6) for failure to state a claim.  See Sterling v. United States, 789 F. Supp. 47, 48 (D.D.C. 1992) (granting United States' motion to dismiss FTCA claim where plaintiff alleged negligence without further reference to applicable state law); see also Art Metal-U.S.A. v. United States, 753 F.2d 1151, 1159-60 (D.C. Cir. 1985) (upholding dismissal under Rule 12(b)(6) where allegations did not state a cause of action under D.C. law).

#### C.    The Doctrine of Claim Preclusion Bars Hornbeck's FTCA Claim.

The doctrine of claim preclusion bars Hornbeck from taking another bite of the remedy apple because its FTCA claim forms part of the same "cause of action" as its APA claim that was litigated previously.  This doctrine states that "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action."  Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004); I.A.M. Nat'l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co., 723 F.2d 944, 946-47 (D.C. Cir. 1983); Polsby v. Thompson, 201 F. Supp.2d 45, 48 (D.D.C. 2002).  In effect, it bars a party from "re-litigating claims that were or *could have been raised* in the initial action."  Meng v. Schwartz, 305 F. Supp.2d 49, 61 (D.D.C. 2004) (Lamberth, J.) (emphasis added); see also Velikonja v. Ashcroft, 355 F. Supp.2d 197, 201 (D.D.C. 2005) (claim preclusion will bar claims that "'could have been raised' at an earlier juncture"); Lewandowski v. Property Clerk, 209 F. Supp.2d 19, 22 (D.D.C. 2002) (doctrine acts as a bar to all "parties' rights regarding matters that could have been litigated" in prior action).

The doctrine is "not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . ."  Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917).  The well-pedigreed doctrine has the salutary goals of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing inconsistent decisions, encourag[ing] reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 94 (1980); see also

21

Apotex, Inc., 393 F.3d at 217 (stating same); Carter v. Rubin, 14 F. Supp.2d 22, 33-34 (D.D.C. 1998) (Lamberth, J.) (stating same). Its purpose is to "encourage[] a plaintiff to mount in a single action its claims against the party which it has haled into court." U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 209 (D.C. Cir. 1985).

The modern doctrine consists of "four factors" that must be established for claim preclusion to apply: "(1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." Polsby v. Thompson, 201 F. Supp.2d at 48; see also Coleman v. Potomac Elec. Power Co., 310 F. Supp.2d 154, 161 (D.D.C. 2004); Meng, 305 F. Supp.2d at 61-62.

The first three factors are straight-forward here. The United States is a party to this case and was a party to the prior APA claim. Doc. 1, Compl.; Hornbeck Offshore Transp. LLC v. United States Coast Guard, 424 F. Supp.2d 37, 38 (D.D.C. 2006) (listing the defendants as the Coast Guard and the United States). The federal district court in the District of Columbia was also a court of competent jurisdiction to decide the APA suit filed by Hornbeck. See 5 U.S.C. § 706 (2000). The decision by the district court in the APA claim was also a final judgment on the merits. Doc. 1, Compl. ¶ 37; Hornbeck, 424 F. Supp.2d at 58.

This argument will focus on the final factor, whether the same "cause of action" was at issue in the APA claim as is at issue in this FTCA claim. To decide this question, the District of Columbia Circuit has adopted the "pragmatic, transactional" approach found in

the Second Restatement of Judgments. <u>U.S. Indus., Inc.</u>, 765 F.2d at 205; <u>Lewandowski v. Property Clerk</u>, 209 F. Supp.2d 19, 22-23 (D.D.C. 2002); <u>Polsby v. Thompson</u>, 201 F. Supp.2d at 50; Restatement (Second) of Judgments § 24 (2007). Under this approach, a valid and final judgment in an action extinguishes a plaintiff's claim, which includes all "rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (2007). The "concept of a transaction is here used in the broad sense." <u>Id.</u> cmt. b. "In general, the expression connotes a natural grouping or common nucleus of operative facts." <u>Id.</u> "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" <u>Drake v. FAA</u>, 291 F.3d 59, 66 (D.C. Cir. 2002); <u>see also</u> <u>Sparrow v. Reynolds</u>, 646 F. Supp. 834, 838 (D.D.C. 1986) (applying claim preclusion to bar claims arising out of same "nucleus of operative fact" as prior suits). A "cause of action consists of all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." <u>Smalls v. United States</u>, 471 F.3d 186, 192-93 (D.C. Cir. 2006) (internal quotations omitted).

The key factors in determining what constitutes a transaction, or series of connected transactions, are "[1] 'whether the facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" <u>Taylor v. Blakey</u>, 490 F.3d 965, 977 (D.C. Cir. 2007) (<u>quoting</u> <u>Apotex, Inc.</u>, 393 F.3d at 217).

*First*, the facts at issue in this FTCA claim are intrinsically related in time, space, and origin to those involved in the previous APA claim.  Both claims arise from the Coast Guard's denial of a later phase-out date to the ENERGY 8701 tank barge.  Hornbeck may argue that the prior APA claim involved allegations that the agency acted arbitrarily, whereas this FTCA claim involves allegations of negligence.  Such an argument is unavailing.

The differences in the legal theory asserted or remedy requested between the APA claim and the FTCA claim will not save Hornbeck's latter action from the preclusive effects of this doctrine.  It is the "facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984); see also Taylor, 490 F.3d at 977-78 ("[A] different legal theory does not by itself demonstrate a difference in the nucleus of facts."). Just because there may be a "number of different legal theories" that "cast[] liability on an actor" arising out of the same "episode does not create multiple transactions and hence multiple claims."  Restatement (Second) of Judgments § 24 cmt. c (2007); U.S. Indus., Inc., 765 F.2d at 205 (This "Restatement approach reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1], at 359 (1983)); Polsby, 201 F. Supp.2d at 50-51 ("[E]ven though one group of facts may give rise to different claims for relief, upon different theories of recovery, there remains a single cause of action.") (internal citations omitted).

There is still only one cause of action here, even though the "legal theories [of arbitrariness and negligence] depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." Restatement (Second) of Judgments § 24 cmt. c (2007). This means that Hornbeck "was required to join [its] legal and equitable claims to avoid the bar" of claim preclusion. Lytle v. Household Mfg., Inc., 494 U.S. 545, 552 (1990); see also Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4410 (2007) ("Demands for equitable and legal remedies on a single claim or cause of action must be advanced in the first action or lost.").

*Second*, the next factor for determining what constitutes a transaction – whether the two claims would form a convenient trial unit – is not particularly pertinent in a case involving an APA claim and an FTCA claim. As occurred in the prior APA claim in this case, the district court decided the APA claim on cross-motions for summary judgment. Hornbeck Offshore Transp., LLC v. United States Coast Guard, 424 F. Supp.2d 37, 39 (D.D.C. 2006). As the D.C. Circuit Court of Appeals has observed, "[t]here are, of course, ways in which a district court can accommodate an overlapping FTCA claim and an administrative appeal . . . . If a district court believes that the results of an appeal of an adverse [administrative] decision would be important to the FTCA action, it can stay the FTCA case pending the outcome." Beins v. United States, 695 F.2d 591, 599 (D.C. Cir. 1982). Hornbeck should have combined its two claims and asserted them both at the same time, leaving to the court the decision of how to manage its own docket. See Charles Alan

Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4408 (2007) ("[I]t is safer to combine all potential claims in a single action, asking leave to sever parts that may better be pursued separately. . . . The causes of convenience and rational litigation may be much better served by compelling joinder [of claims] and leaving to judicial control the decision whether to separate some matters for pretrial or trial.").

*Third*, to the extent that there is any precedent for an FTCA claim arising out of an allegedly negligent misinterpretation of a federal statute, combining the FTCA and APA claims would conform to the parties' expectations or business understanding or usage. See, e.g., Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (FTCA and APA claims in one lawsuit); Bazuaye v. United States, 83 F.3d 482, 483 (D.C. Cir. 1996) (FTCA and APA asserted in the same lawsuit); Golden Pac. Bancorp v. Clarke, 837 F.2d 509, 510 (D.C. Cir. 1988) (asserting APA claim and FTCA claim in same lawsuit); Doe v. Goss, Civ. No. 04-2122, 2007 WL 106523, at *3 (Jan. 12, 2007) (unpublished opinion) (FTCA and APA claims in one lawsuit).

Finally, Hornbeck could have filed both claims in the same lawsuit. Claim preclusion allows parties to bring later claims arising out of the same operative facts only if the later claims "'would have been *utterly impractical*'" to join in the earlier suit. See Apotex, Inc. v. FDA, 393 F.3d 210, 218 (D.C. Cir. 2004) (emphasis added) (quoting U.S. Indus., Inc., 765 F.2d at 205 n.21); Velikonja v. Ashcroft, 355 F. Supp.2d 197, 201 (D.D.C. 2005). The District of Maryland has squarely addressed the issue of whether an FTCA claim is barred by the doctrine of claim preclusion when the plaintiff had already brought an APA claim

arising out of the same set of facts.  <u>Lafayette Fed. Credit Union v. United States</u>, 76 F.

Supp.2d 645 (D. Md. 1999).  Credit unions brought suit under the APA in the Eastern

District of Virginia, claiming that certain decisions of the National Credit Union

Administration (NCUA) were erroneous, arbitrary, and capricious.  <u>Id.</u> at 647.  The plaintiffs

presented their FTCA administrative claim to the appropriate agency while their APA claim

was pending.  <u>Id.</u> at 650.  The district court dismissed the APA claim.  <u>Id.</u> at 648.  After the

dismissal of the plaintiffs' APA claims, the plaintiffs filed an FTCA claim in district court

in the District of Maryland.  <u>Id.</u>  The "same core of operative facts" were at issue in both

claims.  <u>See id.</u> at 647-50.

      The district court found "untenable" the plaintiffs' argument that "there was no way"

– i.e., it  it was utterly impractical – for the plaintiffs to bring the FTCA claim during the

pendency of the APA claim.  <u>Id.</u> at 650.  The court stated:

> As masters of their own claims, Plaintiffs were in full control of
> the dates for filing their suit and the FTCA administrative
> claims.  Plaintiffs presumably had all the information they
> would need to file [their APA claim] and to present their FTCA
> administrative claims [at the time they filed their APA claim].
> That Plaintiffs chose not to present their FTCA claims in a
> timely manner should not now operate to afford them a second
> day in court.

<u>Id.</u> at 650; <u>see also</u> <u>Nernberg v. United States</u>, 463 F. Supp. 752, 754 (W.D. Pa. 1979)

(finding that claim preclusion barred plaintiffs from asserting an FTCA claim on the same

operative facts as their previous Tucker Act claim, even though the plaintiffs had not yet

exhausted their administrative claim remedies pursuant to the FTCA when they filed their

Tucker Act claim).

The district court in <u>Lafayette Fed. Credit Union</u> explained that the plaintiffs had three different options that would have allowed them to join their FTCA and APA claims into the same lawsuit. They could have "(1) waited to file suit until the statutory six-month waiting period [of the FTCA] had expired, (2) filed their FTCA administrative claims earlier than they did, or (3) requested a stay of the [APA] court action." <u>Id.</u> at 651. Because the plaintiffs "failed to bring all available claims involving the same circumstances that *could have been* raised against the Government" in the earlier lawsuit, the doctrine of claim preclusion barred the plaintiffs' subsequent FTCA claim on the "same core of operative facts." <u>Id.</u> at 650, 651.

The same is true here. It was not "utterly impractical" for Hornbeck to bring both its FTCA claim and its APA claim in the same lawsuit. Its statute of limitations period began to run on March 29, 2004, earlier than its APA claim accrued in September of the same year. As a result, Hornbeck could have submitted its administrative claim pursuant to the FTCA and, after waiting the requisite six months to allow the claim to be deemed denied,[10] filed one lawsuit with two claims seeking legal and equitable relief, all arising out of the same core of operative facts. This approach makes sense in light of the fact that Hornbeck's APA claim, which has a six-year statute of limitations, accrued later than its FTCA claim, which has only a two-year statute of limitations. <u>See</u> 28 U.S.C. § 2401(a), (b) (2006); <u>Harris v. FAA</u>, 353

---

[10] 28 U.S.C. § 2675 (2005) (deemed denied).

F.3d 1006, 1009 (D.C. Cir. 2004) (six years for APA): <u>Mittleman v. United States</u>, 104 F.3d

410, 413 (D.C. Cir. 1997) (two years for FTCA).

The predicament in which Hornbeck finds itself in is of its own making.  As the D.C.

Circuit Court of Appeals put it:

> In our system, it is the province of the courts, not a single party
> acting unilaterally, to determine whether issues present in a case
> might better be separated out for later trial.  A party who makes
> a unilateral, unauthorized determination not to go forward on
> issues that were properly in the case does so at its own peril.

<u>U.S. Indus., Inc.</u>, 765 F.2d at 209-10.

Accordingly, the Court must dismiss this FTCA claim.  <u>Cf.</u> <u>Federated Dep't Stores,

Inc. v. Moitie</u>, 452 U.S. 394, 399-400 (1981) (finding that the court of appeals below erred

by not barring a claim that satisfied the elements of the doctrine); <u>Apotex, Inc.</u>, 393 F.3d at

219 (recognizing that there "is no general public policy exception to the operation" of claim

preclusion because there "is simply no principle of law or equity which sanctions the

rejection by a federal court of the salutary principle of [claim preclusion]") (internal citations

omitted).

**D.     The Statute of Limitations Bars Hornbeck's FTCA Claim.**

The FTCA's statute of limitations also bars Hornbeck from asserting this claim

because  its time to file an administrative tort claim with the agency began on March 29,

2004 (the date Hornbeck's request was originally denied) and ended on March 29, 2006,

nearly six months before Hornbeck actually filed its administrative tort claim with the Coast

Guard.  The pertinent statute of limitations provides:

> A tort claim against the United States shall be forever barred
> unless it is presented in writing to the appropriate Federal
> agency within two years after such claim accrues or unless
> action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the claim
> by the agency to which it was presented.

28 U.S.C. § 2401(b) (2005).  This provision requires the claimant to file the claim with the

agency within two years after accrual of the claim *and* then file a complaint in the district

court within six months after the agency denies the claim.  Mittleman v. United States, 104

F.3d 410, 413 (D.C. Cir. 1997); Page v. United States, 729 F.2d 818, 820 n.13 (D.C. Cir.

1984).  The question of whether these conditions have been met is one that is answered with

resort to federal, not state, law.  Page, 729 F.2d at 820; Loughlin v. United States, 230 F.

Supp.2d 26, 39 (D.D.C. 2002); Mittleman v. United States Dep't of Treasury, 919 F. Supp.

461, 466 (D.D.C 1995).

"An FTCA claim accrues once the injured party knows both the fact of his injury and

its cause."  Hall v. Administrative Office of the United States Courts, 496 F. Supp.2d 203,

206 (D.D.C. 2007); see also Loughlin, 230 F. Supp.2d at 39.  "'[T]he statute of limitations

begins to run on the first date that the injured party possesses sufficient critical facts to put

him on notice that a wrong has been committed and that he need investigate to determine

whether he is entitled to redress.'"  Loughlin, 230 F. Supp.2d at 40 (quoting Zeleznik v.

United States, 770 F.2d 20, 23 (3d Cir. 1985)).

That date was March 29, 2004.  On that date, the Coast Guard denied Hornbeck's

application for a later phase-out date for its tank barge ENERGY 8701, ensuring that the

company had to remove the barge from service at the end of that year. (Doc. 1, Compl. ¶ 19). Significantly, Hornbeck's Complaint confirms this as the accrual date for its FTCA action. In a prefatory statement about the agency's denial, Hornbeck alleged, "Notwithstanding *the injury and damages it caused* Hornbeck, on March 29, 2004, the Agency denied Hornbeck's request . . . ." Id. (emphasis added).

It does not matter that Hornbeck did not know the full extent of its likely damages on that date. Sprint Communications Co. v. FCC, 76 F.3d 1221, 1228 (D.C. Cir. 1996) ("Nor is accrual deferred until the injured party has enough information to calculate its damages."); Loughlin, 230 F. Supp.2d at 40 ("[T]he limitations period begins to run even if the claimant does not know the full extent of the injuries . . . ."); W.C. & A.N. Miller Co. v. United States, 173 F.R.D. 1, 5 (D.D.C. 1997) ("[A]ccrual of [plaintiffs'] claims did not wait until the [plaintiffs] had enough information to calculate their damages."); Group Health Inc. v. United States, 662 F. Supp. 753, 760 (S.D.N.Y. 1987) ("[I]t is well-settled that the accrual of an FTCA claim is not postponed while the plaintiff assesses the full amount of [its] damages.").

Similarly, it does not matter that Hornbeck began to challenge the action through internal agency review and ultimately in an APA challenge in the courts. The "date of accrual of an FTCA claim is not postponed during the pendency of a separate administrative appeal." Group Health Inc. v. United States, 662 F. Supp. at 762; see also Winston Bros. Co. v. United States, 371 F. Supp. 130, 134 (D. Minn. 1973) (availability of other remedies does not toll the statute of limitations for FTCA action).

31

Nor is the date of accrual for an FTCA claim necessarily the date of accrual for an APA claim. This case is a good example. Hornbeck's FTCA claim first accrued on March 29, 2004, when the company became aware that the agency had taken action that would result in damages to the company. Doc. 1, Compl. ¶ 19; Hall, 496 F. Supp.2d at 206. In contrast, Hornbeck's APA claim did not accrue until September 15, 2004, when the Coast Guard took final agency action and denied Hornbeck's internal agency appeal. Doc. 1, Compl. ¶ 21; Harris v. FAA, 353 F.3d 1006, 1010 (D.C. Cir. 2004) ("The [APA] right of action first accrues on the date of final agency action."); Sendra Corp. v. Magaw, 111 F.3d 162, 165 (D.C. Cir. 1997) (stating same).

This is also not a case that warrants the application of the continuing tort doctrine, which provides that the statute of limitations period does not begin to run until the cessation of the tortious activity. Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984). The "continuing tort doctrine applies only where 'no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm.'" Mittleman, 919 F. Supp. at 466-67. Here, there is no such continuous chain of conduct. The Coast Guard issued its denial on March 29, 2004, the date of the allegedly tortious act; the Coast Guard's final agency action on September 15, 2004 merely affirmed this previous allegedly tortious decision and triggered the accrual date for Hornbeck's APA claim.

For these reasons, this Court must dismiss Hornbeck's FTCA claim because the statute of limitations period expired on March 29, 2006, almost six months before Hornbeck submitted its administrative claim to the Coast Guard.

32

## III.    CONCLUSION

For all the reasons set forth above, this Court should grant the United States' Motion

to Dismiss Hornbeck's FTCA claim.

DATED:  November 16, 2007.

                                        Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        JEFFREY A. TAYLOR
                                        United States Attorney

                                        DARRELL VALDEZ
                                        Assistant United States Attorney


                                        S/ RODNEY PATTON
                                        RODNEY PATTON
                                        Trial Attorney, Civil Division
                                        Torts Branch
                                        Aviation and Admiralty Litigation
                                        P. O. Box 14271
                                        Washington, D.C.  20044-4271
                                        Telephone:  (202) 616-4105
                                        Facsimile:  (202) 616-4002
                                        E-Mail: rodney.patton@usdoj.gov

                                        S/ JOHN S. LUCE Jr.
                                        JOHN S. LUCE Jr.
                                        Trial Attorney, Civil Division
                                        Torts Branch
                                        Aviation and Admiralty Litigation
                                        P. O. Box 14271
                                        Washington, D.C.  20044-4271
                                        Telephone:  (202) 616-4035
                                        Facsimile:  (202) 616-4159
                                        E-Mail:  john.luce@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of November 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Lawrence I. Kiern
> WINSTON & STRAWN, LLP

> <u>S/ RODNEY PATTON</u>
> RODNEY PATTON
> Trial Attorney,
> Aviation and Admiralty Litigation
> Torts Branch, Civil Division
> P. O. Box 14271
> Washington, D.C.  20044-4271
> Telephone:  (202) 616-4105
> Facsimile:  (202) 616-4002
> E-Mail: rodney.patton@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HORNBECK OFFSHORE TRANSPORTATION, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:07-cv-01030 ) Judge Lamberth ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

## <u>ORDER</u>

Having considered the Motion to Dismiss filed by the United States of America, the

Opposition to this Motion filed by the Plaintiff, and the Reply filed by the United States of

America, **IT IS HEREBY ORDERED**, that the Motion to Dismiss filed by the United States

of America is **GRANTED**.

   **SO ORDERED:**

                              By the Court:


                              _____
                              Royce C. Lamberth
                              United States District Court Judge

cc:

Lawrence I. Kiern                          Rodney Patton
Thomas L. Mills                            John S. Luce Jr.
Gerald A. Morrissey                        Trial Attorneys
WINSTON & STRAWN, LLP                      United States Department of Justice
1700 K. Street, NW                         Civil Division, Torts Branch
Washington, DC 20006                       Aviation and Admiralty Litigation
(202) 282-5811 (direct)                    P.O. Box 14271
(202)282-5100 (fax)                        Washington, DC 20044-4271
                                           (202) 616-4105 (direct)
                                           (202) 616-4002 (fax)


*Attorneys for Plaintiff,*                 *Attorneys for Defendant,*
*Hornbeck Offshore Transportation, LLC*    *United States of America*

2