UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HORNBECK OFFSHORE TRANSPORTATION, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-1030 (RCL) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Now before the Court comes defendant United States of America's motion [11] to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). Upon consideration of the motion, plaintiff's opposition, the reply, the entire record herein, and applicable law, the Court finds that the motion to dismiss will be GRANTED.

**I.   BACKGROUND**

Plaintiff Hornbeck Offshore Transportation, LLC ("Hornbeck") is a limited liability company that owns and operates oil transport vehicles, including the tank barge at issue in this dispute, the "ENERGY 8701." (Compl. ¶ 4.) The United States Coast Guard administers the Oil Pollution Act of 1990[1] ("OPA") on behalf of defendant the United States of America ("Coast

---

[1] Pub. L. No. 101-380, 104 Stat. 484 (1990).

Guard" or "Government"). OPA requires that all newly constructed tank vessels engaged in marine transportation be constructed with double hulls. 46 U.S.C. § 3703a(a). OPA also requires that existing single hull tank vessels be retrofitted with double hulls to qualify for operation on waters of the United States or of the Exclusive Economic Zone of the United States. *Id.* § 3703a(c). Non-retrofitted tank vessels must be phased out of service in accordance with a statutory schedule based on gross tonnage, hull design, and construction date of the subject vessel. *Id.* § 3703a(c)(3). A single hull vessel of the ENERGY 8701's age is subject to phase-out on January 1, 2005 if it weighs at least 5,000 gross tons. *See id.* § 3703a(c)(3)(A). If it weighs less than 5,000 gross tons, the applicable phase-out date is January 1, 2015. *See id.* § 3703a(c)(2).

The United States recognizes two measurement systems for calculating gross tonnage. *See id.* § 3706a(e)(1). The two methods are the "Regulatory" measurement system, *see* 46 U.S.C. § 14501 *et seq.*, and the "Convention" measurement system, s*ee id.* § 14301 *et seq.* Typically, the Convention system results in a higher gross tonnage calculation than the Regulatory system. *See Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 424 F. Supp. 2d 37, 40 (D.D.C. 2006) (Kollar-Kotelly, J.) [hereinafter *Hornbeck I*].[2]

On August 25, 1976, the ENERGY 8701, which had been built earlier that year, received a gross tonnage measurement of 5,323.19 tons from the Coast Guard using the Regulatory

---

[2] For a thorough discussion of the history of OPA, gross tonnage measurement systems, and the underlying Government action that yielded the instant case, see *Hornbeck I*, 424 F. Supp. 2d at 38–42.

system. *Id.* at 41.  Plaintiff acquired the ENERGY 8701 in 2001.[3]  *Id.*  In 2004, in connection with a planned commercial voyage, plaintiff was compelled by international law to obtain a Convention measurement for its vessel.  *See id.*  Accordingly, in February 2004, the American Bureau of Shipping ("ABS") determined that the vessel's gross tonnage was 4,660 tons.  *See id.*  The ABS issued an International Tonnage Certificate for the ENERGY 8701 and delivered the certificate to the Coast Guard.  *Id.*  Given that the vessel received a gross tonnage certificate of less than 5,000 tons, plaintiff requested that the Coast Guard establish a phase-out date of January 1, 2015 rather than January 1, 2005.  *Id.*  On March 29, 2004, the Coast Guard, relying on its interpretation of a 1997 OPA amendment[4] designed to prevent vessel owners from circumventing OPA by employing various strategies to reduce the gross tonnage of their vessels, issued an initial decision denying plaintiff's request.  *Id.* at 42; (*see* Mot. to Dismiss at 5.) Plaintiff appealed this decision and, on September 15, 2004, the Coast Guard affirmed its denial. *Hornbeck I*, 424 F. Supp. 2d at 42.  Plaintiff then filed its *Hornbeck I* complaint on October 8, 2004, and sought relief pursuant to the Administrative Procedure Act ("APA").  *Id.*  While its complaint was pending, plaintiff, in compliance with the Coast Guard's decision, took the ENERGY 8701 out of service.  (*See* Compl. ¶ 23.)

In *Hornbeck I*, the court determined that under OPA's plain language owners may opt to

---

[3] When plaintiff acquired the ENERGY 8701, it believed the barge would be phased out of service on January 1, 2005.  *See Hornbeck I*, 424 F. Supp. 2d at 41.

[4] The Coast Guard specifically relied on amendment language stating that "the gross tonnage of a vessel shall be the gross tonnage that would have been recognized by the Secretary on July 1, 1997, as the tonnage measured under section 14502 of this title [Regulatory measurement], or as an alternate tonnage measured under section 14302 of this title [Convention Measurement] as prescribed by the Secretary under section 14104 of this title."  46 U.S.C. § 3703a(e)(1).

employ either the Convention or Regulatory measurement system, and that the Coast Guard had no authority to prevent recognition of the February 2004 gross tonnage measurement of 4,660 tons for the purposes of setting the ENERGY 8701's phase-out date. *Id.* at 57. The court, in granting summary judgment in favor of Hornbeck on March 27, 2006, concluded that pursuant to the APA "the Agency's refusal to apply the plain language of Section 3703a(e), the entire [OPA] scheme, and the tonnage measurement laws to Plaintiff's vessel was arbitrary, capricious, and otherwise not in accordance with the law . . . ." *Id.* at 58. On remand, the Coast Guard recognized the lower weight measurement and accordingly assigned the January 1, 2015 phase-out date to the ENERGY 8701. (Compl. ¶ 38.)

*Hornbeck I* conclusively addressed the issue of the Coast Guard's arbitrary and capricious statutory interpretation. That case did not however entertain the issue of whether Hornbeck was entitled to damages incurred as a result of the Coast Guard's action.[5] Accordingly, on September 12, 2006, plaintiff presented an administrative claim to the Coast Guard for damages pursuant to the Federal Tort Claims Act ("FTCA"). (*See* Administrative Claim, Ex. 7 to Opp.) On February 21, 2007, the Coast Guard denied this claim and stated that "the United States has not waived sovereign immunity for tort claims based on the Coast Guard's exercise of discretion in making a vessel certification decision." (*See* Denial, Ex. 8 to Opp.)

Plaintiff filed this suit on June 8, 2007, seeking damages pursuant to the FTCA. The Government now asks this Court to dismiss plaintiff's claim based on three theories: (1) the

---

[5] Plaintiff alleges damages of $6,578,789.65 for loss of hire, drydocking expenses, costs incurred in taking the vessel out of service and laying it up, and expenses related to returning the vehicle to service, including $155,498.49 in legal costs incurred in challenging the Coast Guard's unlawful action. (Compl. ¶ 39.)

4

Government's limited waiver of sovereign immunity under the FTCA does not extend to plaintiff's suit here because there is no private party analog at local law for the Coast Guard's unlawful OPA interpretation; (2) the doctrine of claim preclusion bars plaintiff's FTCA suit; and, (3) the statute of limitations has run on plaintiff's claim.

## II. ANALYSIS

### A. Legal Standard: Motion to Dismiss

Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). A court considering a motion to dismiss for lack of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences that can be derived from the facts alleged. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This Court must construe the allegations and facts in the

complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276.

> B.  **Plaintiff's Failure to Allege an Actionable FTCA Claim**

For the reasons set forth below, the Court determines that it is without jurisdiction to entertain Hornbeck's FTCA damages suit.

> 1.  **Sovereign Immunity and the Private Local Law Analog Requirement**

The United States maintains sovereign immunity except to the extent that it consents to be sued, and the terms of its consent define a court's jurisdiction to hear the suit. *See Lehman v. Nakshiam*, 453 U.S. 156, 160 (1981) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see also Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) (indicating that the Government's waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign") (citation omitted). One such example of consent to be sued exists in the FTCA, which sets forth a limited waiver of sovereign immunity under which individual citizens can sue the Government for certain tort claims. The FTCA subjects the Government to liability only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see id.* § 1346(b)(1) (conferring exclusive jurisdiction on federal district courts for FTCA damages claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). Plaintiffs are permitted to file FTCA

suits in federal district court once they present an administrative claim for damages and receive a final agency denial of that claim. *Id.* § 2675(a).

> [T]he FTCA waives the immunity of the United States only to the extent that a private person in like circumstances could be found liable in tort under local law. It is true that negligent performance of (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but *only* if there are analogous duties under local tort law.
> 
> . . . .
> 
> [Further, it is a] well-established principle that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA. This is because the FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law. Duties set forth in *federal law* do not, therefore, automatically create duties cognizable under *local tort law*. The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law.

*Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157–58 (D.C. Cir. 1985) (citations omitted). Thus, this Court must "ask whether a cause of action exists under the District of Columbia law for the injuries [plaintiff] alleges." *Id.* at 1159 (citing *Carlson v. Green*, 446 U.S. 14, 23 (1980)). If the federal law at issue does not embody duties recognized under District of Columbia tort law, a plaintiff will be unable to maintain an FTCA action. *See id.* at 1160; *Loughlin v. United States*, 230 F. Supp. 2d 26, 44 (D.D.C. 2002) ("Subject matter jurisdiction is lacking . . . when no local law could reasonably apply to the government action alleged in the complaint."); *see, e.g., Akutowicz v. United States*, 859 F.2d 1122, 1125–26 (2d Cir. 1988) (finding no analogous private liability for allegedly wrongful revocation of citizenship); *Chen v. United States*, 854 F.2d 622, 626–27 (2d Cir. 1988) (finding lack of subject-matter jurisdiction in FTCA suit for violation of government's federal procurement duties).

### 2.     Local Law Requirement as Applied to Hornbeck

The Court begins its analysis by emphasizing the specific Government action that underlies Hornbeck's putative claim:  negligent withholding of the statutorily mandated January 1, 2015 retirement date.  This result occurred because of the Coast Guard's arbitrary and capricious interpretation of statute, which caused its refusal to recognize the ABS Regulatory system measurement.  *See Hornbeck I*, 424 F. Supp. 2d at 52.  These are the only Coast Guard actions to which plaintiff's claim extends.[6]

Having narrowed this Court's focus to the specific factual basis that could subject the Government to liability, the Court—upon review of precedent in this and other circuits—finds this Circuit's opinion in *Art Metal* particularly instructive in evaluating the Government's motion to dismiss the instant case.  That case involved a government contractor, Art Metal, that had been subject to the General Services Administration's ("GSA") unlawful *de facto* debarment from contract awards in clear violation of the agency's procurement regulations.  *See Art Metal*,

---

[6] The Coast Guard's weighing of the ENERGY 8701 is not at issue, as the Coast Guard did not engage in any weighing.  The ABS performed that function, the accurate performance of which the parties do not challenge.  Thus, the only Coast Guard action at issue here is its failure to properly give effect to the ABS's 4,660 gross ton calculation.  *Cf. Warren v. District of Columbia*, 444 A.2d 1, 11 (D.C. 1981) (citing *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922) (Cardozo, J.) (noting that the "cardinal principal of tort law [is] that, even where no duty to act may exist originally, once one undertakes to act, he has a duty to do so with due care")); *Glanzer*, 135 N.E. at 276 ("[A]ssumption of the task of weighing was the assumption of a duty to weigh carefully . . . .").  If the Coast Guard's exercise of due care in weighing were at issue in the present case, the Court's inquiry would be quite distinct from the assessment it makes today—it appears well-settled that the private local law analog requirement would not bar Hornbeck's negligence claim.  *See Indian Towing Co. v. United States*, 350 U.S. 61, 64, 69 (1955) (rejecting argument that the FTCA excludes liability for the performance of activities which private persons do not perform and holding government liable for damages arising from Coast Guard's negligent lighthouse operation); *Wells v. United States*, 851 F.2d 1471, 1474 (D.C. Cir. 1988) (noting that courts have imposed FTCA liability on the United States for activities that only the Government performs); *Glanzer*, 135 N.E. at 276 (finding that undertaking the act of weighing entails the duty to weigh carefully).

753 F.2d at 1153. Art Metal filed suit pursuant to the FTCA alleging, *inter alia*, that GSA's violations of federal procurement regulations constituted negligence. *Id.* at 1156. Under Art Metal's theory, the GSA procurement regulations imposed specific duties on GSA officials that the agency breached by violating the regulations' clear instructions. *Id.* Art Metal contended that this breach constituted negligence cognizable under District of Columbia law, which like statutes elsewhere, creates a cause of action for negligence consisting of four basic elements: duty, breach, causation, and damages.[7] *Id.* at 1157. *Art Metal* instructed that courts should "ask whether a cause of action exists under District of Columbia law for the injuries" alleged. *Id.* at 1159. Applying the requisite FTCA standard, the *Art Metal* court found that "Art Metal's argument [was] lacking in one vital respect: by basing its negligence claim entirely on violation of federal duties, it fail[ed] to consider that the FTCA waives the immunity of the United States only to the extent that a private person in like circumstances could be found liable in tort under local law." *Id.* at 1157. The GSA failed to give Art Metal the process it was due under the procurement regulations—regulations embracing "constitutional rights [that] are guaranteed under *federal law*, not local law." *Id.* at 1160. The court would not permit Art Metal to circumvent the FTCA's local law requirement by simply casting its claim in terms of negligence when there was no District of Columbia law that would provide for liability. *See id.*

      Like the *Art Metal* court, this Court is unable to find a duty under District of Columbia

---

[7] Art Metal also argued that the agency's actions constituted negligence *per se* under District of Columbia law because the regulations at issue were designed to protect persons in Art Metal's position against the type of harm Art Metal suffered. *See Art Metal*, 753 F.2d at 1157 (citing *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982)).

law—and plaintiff's brief likewise fails to submit one[8]—that is analogous to the duty which the Government allegedly breached—essentially, a duty to accurately interpret statutes. Consequently, Hornbeck's claim dissolves into nothing more than asserting a negligence claim against the Government for violating requirements of applicable federal law. Without an

---

[8] Hornbeck proposes one uncompelling duty by relying on the proposition that a "duty of due care arises when a defendant undertakes to perform an act and injury to the defendant is reasonably foreseeable." (*See* Opp. at 19); *see also Sec. Nat'l Bank v. Lish*, 311 A.2d 833, 834–35 (D.C. 1973) (citing approvingly *Glanzer v. Shepard*, 135 N.E. 275 (N.Y. 1922) (Cardozo, J.)). While this concept may be generally accepted under District of Columbia law, it is nonetheless off-point as applied to Hornbeck. Liability based on this principle requires the undertaking of an affirmative act—for example, operation of a lighthouse, or even the weighing of 905 bags of beans as in *Glanzer*—where injury is foreseeable. *See Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982) (holding, in a case alleging negligent Coast Guard inspection of a vessel, that defendant must have undertaken to perform the task he is charged with performing negligently). Here, the only possible "undertaking" by the Coast Guard was its assignment of a retirement date based on interpretation, indeed misinterpretation, of statute. *See Hornbeck I*, 424 F. Supp. 2d at 52 ("failure to recognize the plain language and meaning of [OPA] *ensured* that [the Coast Guard] gave ENERGY 8701 an incorrect phase-out date . . . ."). The analogy between this action and *any* affirmative duty case is so tenuous that implying a duty in this case would essentially create a duty anytime the Government did anything that affected anyone. Such a result would be perverse given that the FTCA's waiver of immunity is *limited*: violation of a federal duty alone is insufficient to create a cause of action under the FTCA. *See Art Metal*, 753 F.2d at 1157; *Employers Ins. of Wausau v. United States*, 830 F. Supp. 453, 457 (N.D. Ill. 1993) (describing as *limited* the FTCA's departure from strict application of sovereign immunity).

Plaintiff alternatively attempts to frame its case as an intentional trespass to chattel action. (*See* Opp. at 21–22.) Yet, a trespass to chattel action is quite different from the facts alleged here: it "may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965); *see Pearson v. Dodd*, 410 F.2d 701, 707 & n.30 (D.C. Cir. 1969) (quoting Restatement language). The second prong of this definition requires physical contact with the chattel, *see* RESTATEMENT (SECOND) OF TORTS § 217 cmt. e, while the dispossession prong requires physical dispossession or at the very least taking the chattel into the custody of the law, by levy of execution or attachment, impounding, or the like, *see id.* § 221 & cmt. g. These facts do not exist here.

Hornbeck also seeks to avoid dismissal by alleging that the Government's wrongful act constitutes "other intentional torts" besides trespass to chattel. (*See* Opp. at 21.) Yet, even when considering that these proceedings are at an early stage, this vague assertion is insufficient in light of *Hornbeck I*'s conclusion that the Coast Guard's failure to properly interpret OPA was the act resulting in plaintiff's injury.

available private analog in District of Columbia law, such a claim must fail. *See id.* at 1157 (rejecting FTCA liability on this basis); *see also Johnson v. United States*, 547 F.2d 688, 691–92 (D.C. Cir. 1976) ("[S]urely a litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized."); *Employers Ins. of Wausau v. United States*, 830 F. Supp. 453, 455 (N.D. Ill. 1993) ("[I]t would seem strongly counterintuitive for anyone to suggest that the United States—by the partial surrender of its sovereign immunity that is represented by the FTCA—intended to lay itself open to liability *in tort* because one of its executive agencies turned out to have construed a statute differently from the reading that the courts ultimately give that statute.").

  Having reached the tentative conclusion that it has no authority to entertain plaintiff's FTCA claim, this Court next considers plaintiff's most significant assertions in favor of finding that a cause of action exists in this case. The Court considers arguments that (1) *Art Metal* is inapplicable to the present case; (2) the FTCA imposes liability for many activities that only the government performs and does so here; (3) a private local law analog is not required; (4) a series of licensing and permit cases support a cause of action for Hornbeck; and, (5) the liberal pleading requirements make dismissal improper. Taking these arguments in turn, the Court explains why each is ultimately unconvincing and confirms that its tentative conclusion is the only possible outcome in this case.

  First, plaintiff attempts to distinguish *Art Metal* because complainant there unsuccessfully pursued an FTCA claim based on "the federal due process rights afforded by procurement regulations," a claim for which the Circuit found there was no private analog. (Opp. at 13–14 (citing *Art Metal*, 753 F.2d at 1156–60 & n.16)). While the Court recognizes that

Hornbeck does not allege a federal due process violation, nothing in *Art Metal* indicates that the decision and its instructions for how courts should approach FTCA local law analog cases should be restricted to allegations of due process violations.[9]  Rather, the court focused on whether the procurement regulations embodied a duty recognized under District of Columbia tort law.  Thus, *Art Metal* remains applicable as a guide for how to approach an FTCA claim wherein the Government asserts that sovereign immunity bars the claim because of lack of a private analog.  Today, this Court engages in this inquiry as to the Coast Guard's OPA misinterpretation.

Plaintiff also contends that courts, rejecting the "core governmental function" argument, "have imposed liability on the United States in many situations in which the government was engaged in activities that have no analogy in the private sector."  *Wells v. United States*, 851 F.2d 1471, 1474 (D.C. Cir. 1988);[10] *see Indian Towing Co. v. United States*, 350 U.S. 61, 64, 69 (1955) (rejecting argument that the FTCA excludes liability in the performance of activities that private persons do not perform and holding government liable for damages arising from Coast

---

[9] Art Metal's dispute clearly involved a due process claim.  *See Art Metal*, 753 F.2d at 1159–60 (describing the case as "essentially a dispute between buyer and seller" consisting of six alleged wrongs, one of which was "terminating future business relations without notice or an opportunity for a hearing").

[10] The *Wells* court, in rejecting the government's reliance on the private liability requirement, stated that "[v]ery few decisions even mention the Act's private liability requirement and we have found no decisions that rely solely on such a requirement or any 'core governmental function' doctrine in holding the government immune from suit."  *See Wells*, 851 F.2d at 1473–74 (citing *United States v. Muniz*, 374 U.S. 150, 153 (1963)).  That court further indicated that "courts have imposed liability on the United States in many situations in which the government was engaged in activities that have no analogy in the private sector."  *Id.* at 1474.
   Given that *Wells* reached these issues within the context of the government's "core governmental function" argument while *Art Metal* reached its quite distinct decision in the context of the Government's argument—the same argument advanced by the Government here—that plaintiff failed to allege an established cause of action under District of Columbia law, this Court views *Art Metal* as more instructive than *Wells* in the current case.

12

Guard's negligent lighthouse operation); *Hetzel v. United States*, 43 F.3d 1500, 1503–05 (D.C. Cir. 1995) (imposing FTCA negligence liability where law enforcement agent's high-speed chase of a suspected felon breached the duty of care applicable to all drivers despite the fact that private individuals have no authority to engage in high-speed chases). Here, the Government does not argue that the Court lacks subject-matter jurisdiction because weighing vessels is an action solely performed by the Government—a proposition that is clearly false. Instead, the Government asserts that this Court is without jurisdiction because no private local analog exists for misinterpreting a statute.

Plaintiff further argues that a District of Columbia private analog is not required to impose FTCA liability. In one regard, plaintiff is correct: an *identical* private analog is not required. The FTCA *will* impose liability on the Government to the same extent, and in the same manner, as on a private individual under *like* circumstances, but the Court cannot exercise FTCA jurisdiction when the plaintiff "'can point to no liability of a private individual even remotely analogous to that which [it is] asserting against the United States.'" *Employers Ins. of Wausau v. United States*, 830 F. Supp. 453, 457 (N.D. Ill. 1993) (quoting *Feres v. United States*, 340 U.S. 135, 141 (1950)). *But cf. Dupree v. United States*, 247 F.2d 819, 823–24 (3d Cir. 1957) (indicating that sometimes government negligence "involves concepts of local law which may be adapted" to the allegations at issue without great difficulty).[11]

---

[11] In *Dupree*, the court indicated that in cases involving adaptable concepts of local law, stripping a given "situation of its governmental foliage, [and] extraction of the tort where one exists is not an insurmountable difficulty." 247 F.2d at 823–24. In such cases, the court must "characterize the situation in terms the local law will permit." *Id.* at 824. Here, despite its best efforts, the Court simply cannot see the tort for the trees.

13

The Supreme Court has interpreted the FTCA's imposition of Government liability "in the same manner and to the same extent as a private individual under *like circumstances*." 28 U.S.C. § 2674 (emphasis added). In doing so, the Court has stated that "the words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *See United States v. Olson*, 546 U.S. 43, 46 (2005) (citing *Indian Towing*, 350 U.S. at 64)). Accordingly, in *Indian Towing*, a case involving negligent Coast Guard operation of a lighthouse, the Court looked *further afield* and determined that the allegations "were analogous to allegations of negligence by a private person 'who undertakes to warn the public of danger and thereby induces reliance.'" *Id.* at 47 (quoting *Indian Towing*, 350 U.S. at 64–65)). In a similar look *further afield*, the Supreme Court wrote approvingly of the proposition that an allegation of negligent safety inspection by federal agents is analogous to an allegation of negligence where private persons conduct safety inspections. *See id.* (citing *Dorking Genetics v. United States*, 76 F.3d 1261 (2d Cir. 1996) (inspection of cattle)); *Fla. Auto Auction of Orlando, Inc. v. United States*, 74 F.3d 498 (4th Cir. 1996) (inspection of automobile titles)). Additionally, the Supreme Court has suggested that firefighter negligence could be actionable under the FTCA even though it may be "'novel and unprecedented' to hold the United States accountable" in that situation.[12] *Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957).

---

[12] In that case, the United States Forest Service entered into an agreement with the State of Washington whereby the Forest Service would protect against and suppress fires in the area. *Rayonier, Inc. v. United States*, 352 U.S. 315, 316 (1957). Petitioners knew of the agreement and relied on the Forest service to control and put out fires. *See id.* Petitioners pursued FTCA liability based on Forest Service personnel's alleged negligence in allowing a forest fire to start and in failing to properly extinguish the fire before it caused injury to their property. *See id.* at 316–17.

Recognizing a possible FTCA action, the Supreme Court stressed that "the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability." *Id.* at 319.

There, the Court emphasized that "[t]here is no justification for this Court to read exemptions into the [FTCA] beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it."[13] *Id.* at 320 (citing *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 383 (1949)). Yet, in the instant case, despite this Court's straining its vision in an attempt to look as far afield as possible, there is simply no private analog in sight. Hornbeck has not submitted any District of Columbia authority indicating that unlawfully interpreting a statute such that a vessel owner is deprived of a federally mandated phase-out date is an offense for which local law creates a similar cause of action that would hold a private party accountable.

      Next, the Court considers Hornbeck's reliance on several cases for the proposition that tort actions against the United States are permitted when the Government fails to properly issue a certificate, permit, license, or other authorization. (*See* Opp. at 8–11.) For example, plaintiff cites to three Federal Aviation Administration ("FAA") cases involving the FAA's alleged negligent failure to issue airmen medical certificates. *See Harr v. United States*, 705 F.2d 500 (D.C. Cir. 1983); *Beins v. United States*, 695 F.2d 591 (D.C. Cir. 1982); *Duncan v. United States*, 355 F. Supp. 1167 (D.D.C. 1973). However, plaintiff's reliance on this precedent is misplaced as this Circuit has emphasized that neither *Harr* nor *Beins* discussed the relationship between federal law and local tort law. *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1158 (D.C. Cir. 1985). Similarly, *Duncan* does not discuss the issue of private analog. *See* 355 F. Supp. at 1169–70 (analyzing the case solely in terms of the discretionary function exception). Thus, those cases are not instructive in determining whether the Coast Guard's

---

[13] This language is of little comfort to Hornbeck because the Court need look no further than the plain language of the FTCA to find that the Government has not waived its sovereign immunity in this case.

15

arbitrary and capricious OPA interpretation presents a tort cognizable under District of Columbia law. *See id.* (stating that *Beins* and *Harr* did not assist the court in a situation where it had occasion to "squarely address the relationship between a violation of federal regulations and a claim of negligence under local law").[14] Further, both *Harr* and *Beins* involved conduct analogous to a medical malpractice claim.[15] *See Harr*, 705 F.2d at 503 (stating that an FTCA plaintiff could recover if the FAA was negligent in adding an epilepsy charge without an appropriate medical basis); *Beins*, 695 F.2d at 605–08 (assessing several allegations of FAA negligence including "troublesome" practices relating to the provision of medical materials to experts and to assessment of a pilot's current medical condition).  Unlike those cases,[16] plaintiff alleges no negligent acts beyond misinterpretation of OPA.[17]

---

[14] In fact, this Circuit stated that relying on either case for the proposition that violation of a federal regulation can automatically trigger FTCA liability would "do violence to our prior case law" and "also contradict express congressional intent to make the government liable 'if a private person would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*.'" *Id.* (quoting 28 U.S.C. § 1346(b)) (emphasis in original) (citations omitted).

[15] For another example of a case cited by plaintiff but that is easily distinguishable from the issues before this Court, *see Hicks v. United States*, 511 F.2d 407 (D.C. Cir. 1975).  There, the requirement of an analogous private duty under District of Columbia law was not in dispute. That case involved a mental hospital's duty to appraise psychiatric problems, *see id.* at 413–419, a duty that easily translates into already existing District of Columbia malpractice law.

[16] Defendant couches the distinction between this case and the FAA and other cases in terms of imposing liability for *factual errors* but not *legal errors*. (*See* Mot. to Dismiss at 20.) While this proposed rule may be instructive, the Court remains unaware of any authority drawing such a distinction.  Instead, the Court prefers to reference the aforementioned precedent interpreting the FTCA's imposition of Government liability "in the same manner and to the same extent as a private individual under *like circumstances*." 28 U.S.C. § 2674 (emphasis added).

[17] Again, the Court notes that if the Coast Guard's exercise of due care in its weighing were at issue, the Court would entertain an FTCA claim pursuant to *Wells*.  Yet, because misinterpretation of OPA resulted in the Coast Guard's failure to give proper recognition to the Regulatory measurement, which led to the ENERGY 8701's inability to obtain the 2015 phase-out year, *Wells* does not control this case.

Likewise, Hornbeck's reliance on *Berkovitz v. United States* is misguided. *See* 486 U.S. 531 (1988). That case addressed a claim for negligent approval and distribution of an oral polio vaccine, but the Supreme Court restricted its analysis to an entirely different FTCA liability exception—the *discretionary function exemption*—from the local analog requirement at issue in this case. The discretionary function exemption provides an exception from liability for "governmental actions and decisions based on considerations of public policy." *Id.* at 536–37; *see* 28 U.S.C. § 2680(a). The Court finds no correlation between that exemption and the private local law analog requirement as presented in this case. Thus, *Berkovitz* and any other discretionary function case is of no assistance to plaintiff here.

Hornbeck is also unable to find relief in the Federal Rules of Civil Procedure's liberal pleading requirements. It is true that a plaintiff generally need only file a complaint narrating a simple direct grievance so that the defendant knows what he has been accused of; the plaintiff is under no obligation to allege in its complaint facts corresponding to each element of a statute. *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (citations omitted); *see* FED. R. CIV. P. 8. However, "litigants may plead themselves out of court by alleging facts that defeat recovery." *Doe*, 429 F.3d at 708. For the reasons discussed in this Opinion, Hornbeck has done precisely that. Given that *Hornbeck I* concluded ENERGY 8701's incorrect phase-out date was ensured by the Coast Guard's "failure to recognize the plain language and meaning of [OPA]," *see Hornbeck I*, 424 F. Supp. 2d at 52, and that plaintiff makes no indication to the contrary, the Court finds no available analog in local law. Thus, for all the reasons explained above, the Court has no choice but to dismiss this case for lack of subject-matter jurisdiction.[18]

---

[18] The Court notes that its decision today is consistent with Congress' legislative intent. "[A]s the Supreme Court has observed, the entire thrust of the FTCA" is different than that

While this Court is sympathetic to Hornbeck's plight, Congress possesses the ultimate responsibility for determining the extent to which the United States will waive its sovereign immunity to allow private parties to seek damages. And, Congress, not this Court, has made the legislative decision to restrict FTCA actions to those plaintiffs seeking to impose liability analogous to that which exists for private parties under local law. To award relief in the current case would require the Court to so leap beyond the outer bounds of the private analog limitation as to effectively abolish it—an act that this Court is powerless to undertake regardless of the justness of the decision that would result.[19]

Having determined that it is without subject-matter jurisdiction to entertain Hornbeck's suit, the Court has no occasion to consider the Government's arguments that this case is barred by both the doctrine of claim preclusion and the statute of limitations.

---

which Hornbeck encourages: "'[u]ppermost in the collective mind of Congress were the ordinary common-law torts. Of these, the example which is reiterate in the course of the repeated proposals for submitting the United States to tort liability is negligence in the operation of vehicles.'" *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 392 (D.C. Cir. 1983) (quoting *Dalehite v. United States*, 346 U.S. 15, 28 (1953)). Plaintiff's invitation to impose liability for its misinterpretation of statute could not be further from an "ordinary common-law tort."

[19] While the Court has no doubt that the United States' sovereign immunity at times precludes injured plaintiffs from being made whole, the Court finds at least some solace in the fact that in this case Hornbeck acquired the ENERGY 8701 without any expectation of receiving the January 1, 2015 phase-out date. *See Hornbeck I*, 424 F. Supp. 2d at 41.

### III. CONCLUSION

For the reasons set forth above, the Government's motion to dismiss Hornbeck's complaint shall be GRANTED and this case will be dismissed for lack of subject-matter jurisdiction.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on July 1, 2008.